IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DANA JONES,

      Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No.: 3:13-CV-019

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not disabled, and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 14), Plaintiff's Reply (doc. 15), the administrative record (doc. 6), and the record as a whole.[3]

**I.**

**A. Procedural History**

Plaintiff filed applications for DIB and SSI in September 2008, asserting a disability onset date of July 30, 2003. PageID 250-61. Plaintiff alleges disability due to multiple

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations will be to the applicable DIB provisions with full knowledge of the corresponding SSI statutes and regulations.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number. Additionally, Plaintiff's pertinent medical records have been adequately summarized in his Statement of Errors and the administrative decision, *see* doc. 9 at PageID 1472-77; PageID 48-52, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

impairments including, *inter alia*, adult attention deficit hyperactivity disorder ("ADHD"). PageID 293.  Following initial administrative denials of his application, Plaintiff received a hearing before ALJ William B. Churchill on August 8, 2011.  PageID 64-97.  On September 19, 2011, the ALJ issued his written decision, finding Plaintiff not disabled.  PageID 45-54. Specifically, the ALJ's findings were as follows:

1.    The claimant meets the insured status requirements of the Social Security Act through [ . . . ];

2.    The claimant has not engaged in substantial gainful activity since July 30, 2003, the alleged onset date (20 C.F.R. § 404.1571 *et seq*.);

3.    The claimant has the following severe impairment[s]: adult [ADHD], anxiety disorder, and narcissistic personality disorder (20 C.F.R. § 404.1520(c));

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526);

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")][4] to perform a full range of work at all exertional levels[5] but with the following nonexertional limitations: the claimant can understand, remember and carry out complex tasks and maintain concentration for extended periods, but would require limited interaction with supervisors, coworkers, and the public;

6.    The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565);

7.    The claimant [. . .] is currently 50 years old, which is defined as an individual closely approaching advanced age (20 C.F.R. § 404.1563);

---

[4] A claimant's RFC is the most physical exertion a claimant can perform in the workplace despite his or her impairments and any related symptoms, such as pain.  20 C.F.R. § 404.1545(a).  The assessment is based on all relevant evidence in the record and the claimant's ability to meet the physical, mental, sensory, and other requirements for work as described in 20 C.F.R. §§ 404.1545(b), (c), and (d).

[5] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements.  20 C.F.R. § 404.1567.  In this case, the ALJ found Plaintiff capable of performing all levels of work, regardless of its physical requirements.

8.      The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564);

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules [("the Grid")] as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2);

10.    Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a)); [and]

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2003, through the date of this decision (20 C.F.R. § 404.1520(g)).

PageID 101-18 (citations omitted, brackets and footnotes added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner.  PageID 58-62; *see Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Plaintiff then filed this timely appeal.  *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007).

**B. Hearing Testimony**

At the time of the administrative hearing, Plaintiff was fifty years old.  PageID 70. Plaintiff testified that he has been unable to sustain work due to his "hyperactivity, impulsivity, and distractibility."  PageID 72.  Plaintiff reported significant problems retaining employment. PageID 73-74.  He stated that his "unsatisfactory performance has been [the] consistent reason why I've been asked to leave, driven out, and fired from most of the jobs."  PageID 74.  Plaintiff treats his ADHD with medication, therapy, exercise, and diet.  *Id.*

Plaintiff testified as to his previous employment as a truck driver, sales associate, landscaper, and member of the Armed Forces.  PageID 72-79.  When discussing his discharge from the military, Plaintiff described problems following rules and otherwise "staying within the

box." PageID 75.  Plaintiff also testified as to difficulty interacting with co-workers and authority figures in the workplace.  PageID 79.

Plaintiff testified that he makes inappropriate remarks in the workplace.  PageID 81.  He testified that, "when somebody comes up with a subject . . . [like] government and religion, I like to join in on those, and sometimes I get to a point where all of a sudden somebody's being passionate instead of reasoned, and their passion is angry at me."  *Id.*  He reported creating such conflicts with co-workers and strangers alike.  *Id.*

Plaintiff further testified that his distractibility consistently causes him to make mistakes, both at home and in the workplace.  PageID 78.  He reported being unable to understand societal norms, and feeling isolated and alone due to those feelings.  PageID 81.  Plaintiff testified that he occasionally experiences suicidal thoughts.  PageID 80.

### C. Vocational Expert

Vocational Expert ("VE") Calvin Turner also testified at the hearing.  The ALJ asked the VE a series of hypothetical questions regarding Plaintiff's vocational profile.  The ALJ initially described a hypothetical individual with the following limitations: "no physical exertional limitations . . . the person can adequately concentrate for extended periods of time; requires a limited contact with coworkers, public, or supervisors; can perform a complex task."  PageID 90.  The VE testified that such a person would be able to perform Plaintiff's past relevant work as a tractor trailer driver.  PageID 91.  Acknowledging that Plaintiff testified he was unable to perform this position, the ALJ inquired as to other available employment for such a hypothetical person.  *Id.*  The VE identified approximately 32,000 other positions he believed the hypothetical individual would be capable of performing in the regional economy.  PageID 92.

The ALJ then added a limitation based on Plaintiff's ADHD, stating:

> [Y]ou've heard testimony from the applicant that he has this difficulty focusing his attention . . . . [He] would want to move from one station to another, to one task to another.  If we assume that the person would have to engage in this behavior, would these behaviors prevent the person from . . . maintaining [these] positions?

PageID 92.  The VE responded that such limitations would preclude an individual from engaging in even simplistic work.  *Id.*  The VE opined that such a person would have to be "attentive for eight hours of work" and would have "task condition standards that [they would] have to abide by."  *Id.*  The VE found that such a person could not maintain employment.  *Id.*

## II.

### A.  Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Thus, the Commissioner has a "'zone of choice' within which the Commissioner can act without the fear of court interference."  *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  Thus, "a decision of

the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B. "Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act.  42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition.  *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270,

274 (6th Cir. 1997).  During the first four steps of the five-step sequential analysis, the claimant

has the burden of proof.  42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520.  Should the claimant meet

all requirements of the previous steps, at Step 5 the burden shifts to the Commissioner to

establish that the claimant retains the RFC to perform other substantial gainful activity existing

in the national economy.  *Key*, 109 F.3d at 274.

### III.

On appeal, Plaintiff challenges, as unsupported by substantial evidence, the ALJ's RFC

finding -- specifically, the ALJ's determination that Plaintiff can "understand, remember, and

carry out complex tasks and maintain concentration for extended periods."[6]  Doc. 9 at PageID

1478.  At Step 5, the Commissioner has the burden of showing the claimant has "the vocational

qualifications to perform specific jobs."  *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 238 (6th

Cir. 2002).  The Commissioner's Step 5 determination must be supported by substantial

evidence.  *Id.*  "This kind of substantial evidence may be produced through reliance on the

testimony of a [VE] in response to a hypothetical question, but only if the question accurately

portrays [the claimant's] individual physical and mental impairments."  *Id.* (internal quotations

omitted).  The Court finds the ALJ's Step 5 analysis unsupported by substantial evidence

because the ALJ's hypothetical questions to the VE -- and resulting RFC -- did not accurately

reflect Plaintiff's mental impairments.  PageID 90-92.

Because ALJs are not qualified to interpret raw medical data, an RFC determination must

be supported by the medical opinions of record.  *Mitsoff v. Comm'r of Soc. Sec.,* 940 F.Supp. 2d

693, 702 (S.D. Ohio Jan. 24, 2013) (Rice, J.; Newman, M.J.).  Here, although the ALJ

---

[6] To that end, Plaintiff contends the ALJ did not satisfy the shifting burden at Step 5, and failed to demonstrate that there are a significant number of jobs that he can perform.  20 C.F.R. § 404.1520(a)(4). Because the Court finds fault with the RFC asked of the VE, *see infra*, this case merits reversal and remand on that basis and the Court need not inquire further into the number of jobs identified by the VE -- as that number was premised on an inaccurate RFC (and thus inaccurate hypothetical questions).

acknowledged several medical opinions concerning Plaintiff's mental functional abilities, he declined to fully adopt any one of those opinions in his RFC finding.  Every medical source (treating, examining, and consultative), for example, reported that Plaintiff suffers from ADHD.  However, the ALJ improperly formulated Plaintiff's RFC based on a selective incorporation of only those portions of the medical opinions which supported his RFC -- thereby excluding from the RFC any limitations associated with an inability to maintain attention.  *See Howard*, 276 F.3d at 240-41 (finding the ALJ's decision unsupported by substantial evidence because the RFC selectively included only the portions of a medical source's report which suggested the claimant was capable of working).  The ALJ may not pick and choose, without a good medical or other reason for doing so, those limited aspects of the record that he or she chooses, while rejecting other aspects of the record without an identifiable basis for doing so.  Such an analysis, as occurred here at Step 5, means the ALJ's analysis is unsupported by substantial evidence.  In such a case, reversal is merited.  *Accord White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009) (finding reversible error where the ALJ relied on the VE's response to a hypothetical question based on an RFC which did not accurately portray the claimant's physical and mental impairments).

   In an attempt to satisfy his Step 5 burden, the ALJ indicated that he gave "considerable weight to the impression" of Vicki Casterline, Ph.D., a state psychologist who reviewed Plaintiff's medical records, but neither examined Plaintiff nor treated him.  PageID 50.  The ALJ found Dr. Casterline's opinion "consistent with the objective evidence as a whole."  PageID 50-51.  In doing so, the ALJ did not credit the opinions of any of Plaintiff's treaters.  PageID 50-54.  Dr. Casterline generated a mental RFC assessment based on her review of Plaintiff's medical records.  PageID 660-63.  She reported that Plaintiff suffered from ADHD, anxiety, and

narcissistic personality disorder. PageID 665-71. She found Plaintiff's statements regarding his impairments "credible." *Id*. Regarding Plaintiff's RFC, she determined Plaintiff "retains the capacity to learn and perform simple, repetitive tasks in a non-public, routine, predictable environment without strict production standards. He should be able to work independently without close, over-the-shoulder supervision. He should have only occasional, superficial contact with others." *Id*. Dr. Casterline's analysis was affirmed by a second record-reviewing psychologist, David Dietz, Ph.D., in March 2009. PageID 743.

Although the ALJ stated he gave Dr. Casterline's assessment "considerable weight," his RFC determination does not take into account many of the limitations set forth in her opinion -- most significantly, Plaintiff's impairments associated with his ADHD. PageID 50. Dr. Casterline determined, for example, that Plaintiff was limited to "simple repetitive tasks" that are "routine" and "predictable." PageID 663. Instead, the ALJ's RFC determination finds Plaintiff capable of performing any work, with the ability to "carry out complex tasks and maintain concentration for extended periods." PageID 49. The ALJ's decision offers no rationale as to why he adopted some limitations offered by Dr. Casterline and overlooked others. PageID 51. While an ALJ does not have an obligation to include all limitations of record in a hypothetical, the ALJ does have a duty to explain why certain limitations are excluded, and other limitations are incorporated into the RFC. *Phipps v. Comm'r of Soc. Sec.*, No. 3:11-CV-51, 2011 WL 6076334, at *6 (S.D. Ohio Dec. 6, 2011) (Black, J.) (finding an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position"). In this case, the ALJ impermissibly selected the portions of Dr. Casterline's opinion that supported his RFC finding and discarded others. *Id.*

Given that the ALJ's RFC did not accurately portray Plaintiff's mental impairments, the VE's testimony in response, premised on such RFC, does not provide substantial evidence that Plaintiff can perform other work.  As such, the ALJ has failed to satisfy the burden at Step 5. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) (finding the ALJ erred in failing to incorporate the claimant's demonstrated mental impairments into the RFC). His decision is not supported by substantial evidence, and merits reversal.

## IV.

### IT IS THEREFORE RECOMMENDED THAT:

1.  The ALJ's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2.  This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) in order for the ALJ to hold another administrative hearing, and determine anew Plaintiff's RFC and disability status; and

3.  This case be **CLOSED**.


January 30, 2013                                         s/ Michael J. Newman
                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).